IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiffs,<br><br>vs.<br><br>MARCOS DE LA TORRE-CASAS,<br><br>                Defendant. | 8:15CR19<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Findings and Recommendation (Filing No. 24) issued by Magistrate Judge F.A. Gossett recommending that the Motion to Suppress (Filing No. 17) filed by Defendant Marcos De La Torre-Casas ("Defendant") be denied. Defendant filed an Objection to the Findings and Recommendation (Filing No. 30). The Government did not respond to Defendant's Objections. For the reasons stated below, the Findings and Recommendation will be adopted and the Motion to Suppress will be denied.

## FACTUAL BACKGROUND

The Indictment (Filing No. 1) charges the Defendant with distribution of methamphetamine and illegal reentry into the United States. The Defendant seeks to suppress any and all evidence found on his person and in his vehicle during his arrest on December 19, 2014. The Defendant argues that law enforcement lacked probable cause to arrest him; therefore, the evidence seized resulted from an illegal search and seizure.

Following an evidentiary hearing, Judge Gossett issued oral findings of fact and conclusions of law and a Findings and Recommendation. At the hearing, two law

enforcement officers who were present at Defendant's arrest testified: Matthew Kessler ("Kessler"), a special agent with the Drug Enforcement Administration ("DEA"), and Will Rinn ("Rinn"), a sergeant in the Douglas County, Nebraska Sheriff's Office. The testifying officers worked as part of a joint task force that included the DEA and the Douglas County Sheriff's Office (the "Task Force").

On December 19, 2014, the Task Force acted on a tip from a confidential informant ("CI") who told law enforcement about a possible drug transaction between known target Tammy Gall ("Gall") and a male individual. Kessler stated that the CI had been signed up with the DEA and Douglas County Sheriff's Office for approximately 90 days. (Transcript of Motion to Suppress Evidentiary Hearing "Tr.", Filing No. 29 at 7.) Rinn testified that he had worked with the CI on and off since 2007. (Tr. 39.) In Rinn's experience, the CI was reliable and had consistently provided law enforcement with accurate information. (Tr. 40.) Kessler also testified that previous attempts to make arrests related to this particular CI failed only because of lack of manpower, and that this particular CI was involved in other pending investigations. (Tr. 28, 3-5.)

Kessler testified that he attended an operational briefing at approximately 8:00 p.m. on December 19, 2014, with Rinn, Deputy Jason Mass, and Deputy Theresa Ogorazly, along with two other criminal investigators from the Douglas County Sheriff's Office. (Tr. 10, 8-11.) Kessler testified that the Task Force was told that Gall "was supposed to meet with an unknown to receive a quantity of methamphetamine. Based on the information we received in the past, it was going to be the No Frills on Saddle Creek or there was a possibility of Hy-Vee on Center Street." (Tr. 10.) Kessler testified that, according to the CI, the transaction would occur between 8:30 and 9:00 p.m. Kessler testified that he was told the other individual would be an Hispanic male. (Tr. 11.) Rinn testified, according to the CI,

the other individual would be an Hispanic male named Marcos. (Tr. 42.)  The CI further told Rinn that the other individual regularly conducted trafficking of methamphetamine in and around the area of the No Frills Supermarket on Saddle Creek Road in Omaha (the "No Frills").  (Tr. 42.)

Based on information from the CI, Kessler went to Bennington, Nebraska, to watch for Gall to depart from her residence in a white pickup truck.  Other law enforcement officers, including Rinn, established positions in and around the No Frills. In Bennington, Kessler observed a white pickup depart the specified residence and then followed the white pickup to a parking lot near the No Frills.  The white pickup arrived at No Frills at some point before 9:00 p.m., consistent with the information the CI provided. (Tr. 16.)  Once the white pickup arrived at the parking lot, officers identified Gall as the driver.  Gall did not exit the white pickup while it was in the parking lot.  Kessler testified that Gall's actions were suspicious because it was odd for an individual to pass several grocery stores between Bennington and the No Frills, and all of Gall's actions were consistent with the information law enforcement received from the CI.  (Tr. 18.)

Several officers observed the white pickup in the parking lot.  Kessler testified that shortly after Gall arrived, Kessler observed a blue sedan pass his vehicle. Kessler then observed a male in a tan jacket (the Defendant) exit a vehicle and walk directly to the white pickup truck.  Kessler could not state whether the Defendant exited the blue sedan. The Defendant entered the white pickup and then exited approximately 30 seconds later.  Kessler testified that the Defendant then walked in the direction of the blue sedan, though at that point, Kessler was not sure which vehicle he entered.  (Tr.

3

21.)    Other officers radioed that they saw the Defendant exit the white pickup truck and get back into the blue sedan. (Tr. 34.)

Shortly after the Defendant exited the white pickup truck, Rinn gave the order to "takedown" the vehicle the Defendant entered. Both Kessler and Rinn testified that they believed the Defendant had committed an offense based on information from the CI and what Kessler and other officers observed and communicated. Specifically, both Kessler and Rinn noted that in their experience and training, drug transactions occurring in public places generally occur through short meetings inside vehicles. During the takedown, a deputy communicated to Rinn that the Defendant made an assertive quick move to his waistband as officers attempted to arrest him. After that, officers handcuffed the Defendant before learning his identity.

After the takedown of the Defendant, Kessler departed the scene to the other side of the parking lot where a uniformed officer had stopped Gall. When Kessler arrived, Gall was in handcuffs and another officer was patting her down. When questioned by the other officer about the bulge in Gall's pants, Gall stated that the bulge was drugs. Kessler testified that the Defendant was arrested before officers knew Gall had drugs in her possession.

Judge Gossett found Kessler and Rinn's testimony credible. Judge Gossett recognized that there was some question about whether the Defendant's vehicle was green or blue but did not find this distinction to be relevant to the officers' credibility. Judge Gossett also recognized there was some conflict as to whether officers had information that the Defendant's name was Marcos prior to his arrest.

Judge Gossett determined that the CI was previously reliable, and, given the totality of the circumstances, the information given by the CI in this instance was corroborated by the manner in which the events unfolded. Based on this information, Judge Gossett concluded that officers had probable cause to arrest the Defendant, reasoning that the information officers had would lead any reasonable officer to believe that a crime had been committed in their presence. Judge Gossett noted that even if the officers lacked probable cause, they had reasonable suspicion to effectuate a stop. After the stop occurred, additional information, such as learning the Defendant's name and finding drugs on Gall, allowed officers to develop probable cause.

The Defendant objects to Judge Gossett's Findings and Recommendation, arguing that Judge Gossett erred in finding that the officers' testimony was credible and that the CI was reliable. The Defendant also asserts that Judge Gossett erred in concluding that law enforcement officers had probable cause to arrest him.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which a Defendant has objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendation. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## DISCUSSION

### I.     Credibility of Officer Testimony

The Defendant argues that Rinn's testimony was not credible. On review, the Court must determine whether Rinn's testimony was "so implausible that a reasonable

5

fact-finder would not credit the testimony." *United States v. Portmann*, 207 F.3d 1032, 1033 (8th Cir. 2000). The Defendant asserts Rinn's testimony was inconsistent and contradictory in two ways. First, Rinn testified that that all of the officers were informed that the unknown individual at the No Frills would be an "older Hispanic male named Marcos." (Tr. 61.)  In contrast, Kessler testified only that they knew the unknown individual would be an older Hispanic male.  Judge Gossett found this was not a contradiction because Kessler was never asked if he knew the individual's name was Marcos.[1]  Second, the Defendant argues that Rinn's testimony was not credible because he testified that the Defendant's car was green even though the Defendant was arrested in a blue car. Judge Gossett determined that based on the facts and circumstances of this case, Rinn's testimony about the color of the car did not affect his credibility.

These points of contention regarding Rinn's testimony do not suggest a lack of credibility.  The Defendant's name and vehicle color were not integral to the officers' decision to arrest him.  Rinn gave the order to arrest the Defendant based on information from the CI and the report from other officers who observed the Defendant leave Gall's white truck and enter the blue or green vehicle.  It cannot be said that Rinn's testimony in this respect was "so implausible that a reasonable fact-finder would not credit the testimony." *Portmann*, 207 F.3d at 1033. Accordingly, Judge Gossett's conclusion as to Officer Rinn's credibility was not erroneous.

---

[1] Kessler was asked on cross-examination whether all the information Kessler had was that the unknown individual was a Hispanic male. Kessler confirmed that this was correct. (Tr. 26.)

6

## II.  Probable Cause to Arrest

### a.  Reliability of Confidential Informant

The Fourth Amendment protects, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV.  "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."  *Devenpeck v. Alford,* 543 U.S. 146, 152 (2004). "Probable cause to make a warrantless arrest exists when, considering all the circumstances, police have trustworthy information that would lead a prudent person to believe that the suspect has committed or is committing a crime." *United States v. Parish*, 606 F.3d 480, 486 (8th Cir. 2010).  A "probability or substantial chance of criminal activity, rather than an actual showing of criminal activity" is sufficient.  *United States v. Torres-Lona,* 491 F.3d 750, 756 (8th Cir. 2007) (internal quotation omitted). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause."  *Maryland v. Pringle,* 540 U.S. 366, 371 (2003) (internal quotation omitted).

The officers' decision to arrest the Defendant was based largely on information from the CI. A probable cause determination may be based on information from a reliable confidential informant. *United States v. Webster*, 625 F.3d 439, 443 (8th Cir. 2010). "Information from a confidential informant is reliable if the informant has a history of supplying reliable information or if the information provided by the informant is

7

independently corroborated." *Id.* (quoting *United States v. Neal,* 528 F.3d 1069, 1073 (8th Cir. 2008)).  In this case, the CI had a history of providing reliable information and the information supplied was independently corroborated.  Rinn had worked with the CI on and off since 2007.  Rinn testified that the CI's information was reliable because the CI voluntarily came forward to law enforcement and the CI consistently provided accurate information. (Tr. 39-40.)  Although no arrests had been made with respect to information about drug trafficking offenses from the CI, both officers testified this was due to a lack of manpower rather than inaccurate information.  Rinn specifically stated that he never had any issues with the accuracy of the CI's information. (Tr. 40.)

Officers also independently corroborated the CI's information. "Independent verification occurs when the information (or aspects of it) is corroborated by the independent observations of police officers." *United States v. Brown*, 49 F.3d 1346, 1349 (8th Cir. 1995).  The officers received information that a drug transaction between Gall, a person known to the law enforcement officers, and an unknown Hispanic male would take place on December 19, 2014, between 8:30 and 9:00 p.m. in the parking lot of either the No Frills or the Hy-Vee on Center Street in Omaha. The CI told officers that Gall would leave her residence in Bennington, Nebraska, in a white pickup truck and travel to the location of the drug transaction. Kessler independently verified this information when he observed a white pickup truck leave Gall's residence and proceed to the parking lot of the No Frills.  At the No Frills parking lot, officers positively identified Gall as the driver of the white pickup truck.  Once at the No Frills parking lot, officers observed an Hispanic male individual enter the white pickup and then exit after about 30

seconds. Officers observed that these events after the operational meeting at 8:00 p.m., and before or about 9:00 p.m.

Officers, therefore, independently observed that the CI's information was consistent with the events leading to the Defendant's arrest. The fact that Gall and the Defendant acted in manner predicted by the CI and arrived at the time and location predicted by the CI suggest the CI was reliable. *See United States v. Rodriguez,* 414 F.3d 837, 843 (8th Cir. 2005) (concluding probable cause was established, in part, by the defendant's arrival at the right time and place as scheduled by the informant); *United States v. Webster*, 625 F.3d 439, 444 (8th Cir. 2010) (concluding the fact that defendant's conduct in arriving at the designated place involved "innocent" behavior did not diminish the value of informant's information; rather, it increased the probability the informant was correct regarding defendant's criminal behavior); *United States v. Brown,* 49 F.3d 1346, 1349 (8th Cir.1995) (concluding that the informant's prediction about the defendant's description and time and manner of delivery of crack cocaine increased the probability that other aspects of the information concerning criminal activity were also correct). Accordingly, officers independently corroborated the CI's information.

In addition to the information provided by the CI, officers observed activity consistent with a drug transaction. *See United States v. Sherrill*, 27 F.3d 344, 347 (8th Cir. 1994) (concluding that law enforcement corroborated CI's information where officers observed unusual pedestrian traffic consistent with drug sales both at the defendant's residence and a dwelling that the defendant often visited). The Eighth Circuit has stated that "observation of apparently innocent acts 'can be significant to a trained officer' and that the officer is 'entitled to assess probable cause in light of his

experience.'" *United States v. Carlson*, 697 F.2d 231, 238 (8th Cir. 1983) (quoting *United States v. Wentz,* 686 F.2d 653, 656 (8th Cir.1982)).

In this case, both officers testified that Gall and the Defendant acted in a manner consistent with a drug sales. Kessler stated that "in my training and experience I know that drug -- drug transactions that happen in public places, they usually happen inside of vehicles, and when two individuals meet to do such, they're not in the vehicles very long. It's usually pretty quick." (Tr. 22.) Rinn stated "in many times that I've seen this that the transaction was to take place specifically getting into the car, very short term, with no other purpose and that the individual then got back out, that a drug transaction had taken place." (Tr. 55.) Considering the totality of the circumstances, including the consistency and accuracy of the CI's information and the officers' training and experience, probable cause existed to arrest the Defendant.

### b. *Identification of Defendant*

Defendant argues that the Government has not shown probable cause because the testifying officers lacked personal knowledge as to the identification of the person getting in and out of Gall's white pickup truck on the night of the arrest. Neither Rinn nor Kessler saw the person who exited the white pickup truck enter the vehicle where law enforcement arrested the Defendant. Instead, the officers testified that they relied on statements by other officers on the scene who witnessed the Defendant enter and exit Gall's white pickup truck. (Tr. 63-64.) Judge Gossett appropriately determined probable cause based on the combined knowledge of law enforcement officers present at the No Frills parking lot. *United States v. Banks*, 514 F.3d 769, 776 (8th Cir. 2008) (stating that "it is appropriate to judge probable cause upon the basis of [law

enforcement's] combined knowledge, because we presume that the officers have shared relevant knowledge which informs the decision to seize evidence or to detain a particular person.") (internal marks and citation omitted). A finding of probable cause "may be based on the collective knowledge of all of the law enforcement officers involved in an investigation if some degree of communication exists between them." *United States v. Gillette*, 245 F.3d 1032, 1034 (8th Cir. 2001) (internal marks and citation omitted).

It is undisputed that Rinn and Kessler were not independent actors and that they were part of a Task Force that included the other officers in the No Frills parking lot. *See id.* (stating that the "degree of communication" requirement of the collective knowledge theory distinguishes search teams and independent actors). Rinn testified that several officers identified the Defendant as the individual who entered Gall's white pickup truck and then entered the vehicle where Defendant was arrested. The testimony demonstrates that team members were in constant communication both before and after Defendant's arrest. Accordingly, the testifying officers properly relied on the statements of other officers in establishing probable cause.

## CONCLUSION

For the reasons discussed, the Findings and Recommendation will be adopted, and the Motion to Suppress will be denied.

IT IS ORDERED:

1. The Findings and Recommendation (Filing No. 24), and the oral Findings and Recommendation following the evidentiary hearing (transcript at Filing No. 29), are adopted;

2. The Motion to Suppress (Filing No. 17) filed by Defendant Marcos De La Torre-Casas, is denied; and

3. The Defendant's Objection to the Findings and Recommendation (Filing No. 30) is overruled.

Dated this 1st day of June, 2015

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge